

FILED

AUG 26 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW DUNCAN,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SAN DIEGUITO UNION HIGH SCHOOL DISTRICT, a local educational agency; and TISH ZITMAN, an individual,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:18-cv-00321BEN-BLM<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**[Doc. No. 17.]** |

Plaintiff Andrew Duncan ("Plaintiff") initiated the present action against Defendants San Dieguito Union High School District ("District"), and Tish Zitman ("Zitman") (collectively "Defendants"), on March 2, 2018, based on their purported disability discrimination resulting in the denial of a Free Appropriate Public Education ("FAPE") in violation of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973. ("Complaint" Doc. No. 1 ¶¶ 8-31.) Plaintiff seeks money damages and other appropriate relief.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. Having considered the briefing and governing law, the Court **DENIES** the Defendants' motion to dismiss for the reasons stated below.

# I. BACKGROUND[1]

Plaintiff, an adult male, is a special education student who suffers from a complex expressive communication disorder which is secondary to his autism diagnosis. *Id.* ¶ 8. Plaintiff attended La Costa Canyon High School located within the San Dieguito High School District up until late spring of 2016. *Id.* Because of his disabilities, Plaintiff requires special accommodations to access the District's general high school curriculum, including a communication partner who facilitates his communications and a letter board to dictate his communications.[2] (Doc. No. 17 at 2.)

Plaintiff alleges that during the 2015-2016 school year, Zitman (*Plaintiff's history teacher*) regularly spoke directly to his communication partner, ignoring Plaintiff and effectively excluding him from classroom activities. (Doc. No. 1 ¶ 10.) This ongoing practice made Plaintiff feel "invisible" and purportedly crushed him psychologically. *Id.*

On February 11, 2016, Zitman further frustrated this problem by requesting Plaintiff to answer who wrote the Gettysburg address without the assistance of his letter board or communication partner. *Id.* ¶ 11. Plaintiff claims this caused him to feel anxious and pressured to answer.[3] *Id.* Eventually, he "wrote down on paper, 'who wrote the Gettysburg Address.'" *Id.* ¶ 14.

---

[1] The following overview of the facts are drawn from the relevant allegations of the Complaint for resolving the instant motion to dismiss. The Court is not making findings of fact.

[2] Plaintiff "communicates through Rapid Prompting Method, a mode of communication in which he points to letters on a letter board and a communication partner writes them down, or speaks them aloud, for him. Using this system he is able to communicate effectively and quickly, thereby allowing him to engage in conversational exchanges of much greater fluency and complexity that if he were forced to rely on his verbal or written communication skills. (Doc. No. 1 ¶ 8.)

[3] "I was sitting in history and Ms. Zitman insisted on having me answer her question without using my letter board. It made me feel like a failure because it made me realize I still can't answer people without using my letterboard. She kept asking me to write who wrote the Gettysburg address. She specifically asked Ms. Katie not to facilitate and not to allow me to answer with the board. This made me anxious and I felt pressure to

2

Because of this incident, Plaintiff became withdrawn in his interactions with others, he lacked interest in school activities and his self-confidence/self-esteem plummeted. *Id.* ¶ 15. In the weeks that followed, the Plaintiff's depression increased, and he became uncharacteristically aggressive with one of his aids, eventually leading to his removal from the class. *Id.* To date, Plaintiff remains withdrawn and lacks self-confidence. *Id.* ¶ 17. Furthermore, Plaintiff's educational program access purportedly has been substantially diminished. *Id.* Plaintiff subsequently filed the suit which is the focus of this Motion.

Defendants argue the Court should dismiss Plaintiff's Complaint because he failed to exhaust his administrative remedies as required under the Individual with Disabilities Education Act, 20 U.S.C. §§ 1400, 1400, et seq. ("IDEA"), the IDA and by the United States Supreme Court Decision, *Fry v. Napoleon Cmty. Sch. et al.*, 137 S. Ct. 743 (2017) ("*Fry*").

## II. LEGAL STANDARD

### A. Fed. R. Civ. Proc. 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

---

answer. I have always felt that Ms. Honsberger and Ms. Zitman don't believe I belong in their class. (Doc. No. 1 ¶ 11.)

3:18-cv-00321BEN-BLM

1 While a complaint need not contain detailed factual allegations, it "must contain sufficient

2 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

3 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

4 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the

5 reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

6    **B. Judicial Notice**

7    Defendant has requested judicial notice of four documents, attached to the request

8 as Exhibits A through D: (A) Plaintiff's due process hearing request (Case No.

9 201802357) filed with the Office of Administrative Hearings on February 9, 2018; (B)

10 The May 2018, Executed Final Settlement Agreement between Plaintiff and Defendants

11 settling Office of Administrative Hearings Case No. 201802357; (C) The Complaint for

12 Violation of the Unruh Civil Rights Act, California Government Code section 11135,

13 Negligent Supervision, Intentional Infliction of Emotional Distress, and Respondeat

14 Superior in the action styled *Andrew Duncan v. San Dieguito Union High School District*

15 *and Tish Zitman*, No. 37-2018-00010857-CU-CR-NC (California Superior Court, San

16 Diego County), filed March 2, 2018; and (D) the Order dismissing the action, dated

17 August 1, 2018. (Doc. No. 17-3 at 16-57.)

18    Judicial notice is appropriate with respect to Exhibits A and B for the purpose of

19 the motion to dismiss because they are records of an administrative agency. *Mack v.*

20 *South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take

21 judicial notice of records and reports of state administrative bodies), *overruled on other*

22 *grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111, 111 S. Ct.

23 2166, 115 L. Ed. 2d 96 (1991). The Court further takes judicial notice of Exhibits C and

24 D for the purpose of the motion to dismiss because they are state court records. Under

25 Federal Rule of Evidence 201, this Court may take judicial notice of matters of public

26 record.

27

28

4

1    Plaintiff has neither opposed the request for judicial notice nor disputed the

2    authenticity of the documents. The request for judicial notice is **GRANTED** with respect

3    to all the exhibits attached to the motion.

### III. DISCUSSION

5    Plaintiff claims his ability to communicate was denied "by the employee of a public

6    entity," effectively preventing him from participating fully and equally in the program

7    operated by the District, which he was guaranteed under the effective communications

8    regulation of the Americans with Disabilities Act (42 U.S.C.A. section 12134(b); 28 C.F.R.

9    section 35.160) and in violation of Section 504 (29 U.S.C.A. § 794(a)(2)(B)).[4] (*See* Doc.

10   No. 18 at 2.) Defendants argue Plaintiff failed to exhaust his administrative remedies as

11   required under the IDEA.

### A. Exhaustion of Administrative Remedies.

13   Congress passed the IDEA to ensure that all children with disabilities have access to

14   a FAPE that meets their unique needs and prepares them for further education,

15   employment, and independent living. 20 U.S.C. § 1400(d). Disputes between school

16   districts and parents about the implementation of a FAPE for individual students are subject

17   to the administrative procedures outlined in Section 1400 of Title 20 of the United States

18   Code. Only upon conclusion of these administrative procedures may an aggrieved party

19   file an action in state court or district court. 20 U.S.C. § 1400(i)(2)(A).

20   The IDEA, however, is not the only statute pertaining to children with disabilities in

21   school settings. The prohibition of disability discrimination in the ADA and Title 5 of the

22   Rehabilitation Act overlap with the IDEA: (1) Title II of the ADA prohibits any "public

23   entity" from discriminating based on disability; and (2) Section 504 of the Rehabilitation

---

27   [4]    Specifically, in each of the complaints, "the actions complained of had no
28   imaginable educational purpose, and constituted acts of discrimination distinct from any
     denial of education per se." (Doc. No. 18 at 2.)

5

Act prohibits discrimination based on disability in any "federally funded program or activity." 42 U.S.C. §§ 12131-32; 29 U.S.C. § 764(a).

Because of the imbricating nature of these disability-related statutes, Congress provided a "[r]ule of construction" to explain how the IDEA interacts with other federal statutes:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, [T]itle V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).

Thus, the IDEA exhaustion provision in Section 1415(*l*) does not *necessarily* apply to other statutes. As clarified recently by the United States Supreme Court, the IDEA exhaustion requirement extends to other types of disability discrimination claims *only* where the essence of those claims seek relief for a denial of FAPE. *Fry v. Napoleon Comm. Sch.*, 137 S. Ct. 743 (2017).

*Fry* involved a child, E.F., with a severe form of cerebral palsy who relied on a Goldendoodle service dog named Wonder to assist her with various life activities. Pursuant to the IEP process, E.F.'s school district forbade her from bringing Wonder to school, offering E.F. a human aide instead. *Id.* at 751. The *Frys* filed suit against the school district asserting violations of the Rehabilitation Act and the ADA, which the trial court dismissed for lack of administrative exhaustion under the IDEA as the relief sought was available under the IDEA. On appeal, the Supreme Court reversed, explaining that "[w]hat matters is the crux—or, in legal speak, the gravamen—of the plaintiff's complaint[.]" *Fry*, 137 S. Ct. at 755. To make this determination, the Court held, it is not dispositive whether the claims include precise words such as IEP or FAPE. *Id.* While the IDEA ensures children individualized educational services, Title II of the ADA and Section 504 of the

6

Rehabilitation Act guarantee non-discriminatory access to public institutions, within and beyond the doors of the schoolhouse. *Id.* The same conduct might violate all three statutes, or a complaint brought under Title II and Section 504 "might instead seek relief for discrimination, irrespective of the IDEA's FAPE obligation." *Id.* at 756. The Court held a "complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(*l*)'s exhaustion rule ...." *Id.*

To aid lower courts in determining whether a complaint seeks redress for the denial of a FAPE or, instead, for wrongs independent of a FAPE, the Court posed two questions to use as "clues": (1) could the claim be brought if the alleged conduct occurred at a public facility that was not a school?; and (2) could an adult, such as a visitor or an employee, have pressed essentially the same grievance? Applying these questions to E.F., the Court noted the *Frys* were not challenging the district's provision of educational opportunities; by providing a one-to-one human aid, E.F.'s parents conceded that all of E.F.'s educational needs were satisfied. Wonder's assistance, however, was not simply about accessing educational services. Wonder assisted E.F. in living independently by helping her with activities such as retrieving dropped items, helping her balance, opening and closing doors, turning on and off lights, helping her take her coat off, and helping her transfer to and from the toilet. Precluding Wonder's assistance, the Court reasoned, was like requiring a student who used a wheelchair to be instead carried by an aid or requiring a blind student to be led around by a teacher instead of permitting that student to use a guide dog or a cane. This type of claim could be pressed at any public facility, not just a school because it did not center on providing appropriate educational services, it centered on accommodating access of a disabled person to a public facility. It could also be brought by a visitor or an employee seeking equal access to the facilities as the accommodation, at its heart, because it has little to do with the provision of educational services.[5]

---

[5] Ultimately, the Court remanded the case to consider whether the history of the proceedings might suggest the *Frys* invoked the IDEA's dispute resolution process before

7

The clues posed in *Fry* indicate here the gravamen of Plaintiff's ADA and Section 504 claims of the Rehabilitation Act do not seek remedies for the denial of a FAPE. The provision providing for use of a letter board may tangentially involve access to education in the sense that without its use, Plaintiff may not be able to access the curriculum appropriately. Nevertheless, the central tenet of Plaintiff's claims here is that the denial of his letter board as a communication device equates to not being accommodated and thus precludes Plaintiff from access to the school itself. Without the appropriate accommodation at school, Zitman forced Plaintiff "to respond to her without the board, an action analogous to forcing a person who primarily communicates through sign language to answer her without using their hands." (Doc. No. 1 ¶ 12.) As a result, the Plaintiff suffered a loss of opportunity to receive equal education and equal access to public education. (*See* Doc. No. 17 at 6-7.) Thus, the need for Plaintiffs letter board centers on his ability to be independent and communicate in society—not his educational needs.[6] As such, this claim could be pressed against any place of public accommodation that refused to allow Plaintiff to utilize his letter board to communicate.[7] Moreover, because the essence of the claim does not pertain to Plaintiff's educational needs, the Rehabilitation Act and ADA claims could be brought by a visitor or an employee of the school who had a similar need for accommodation. The need for Plaintiff's letter board at school is

---

bringing suit and whether those actions showed the gravamen of the complaint was indeed a denial of FAPE, thus necessitating further exhaustion. *Fry*, 137 S. Ct. at 758.

[6] "Perhaps most importantly, this method of communication has allowed him to communicate independently: he receives no guidance or touch from his communication partner who plays a role analogous to either a voice-to-text or text-to-voice program on a computer depending on whether Mr. Duncan is doing school work or communicating directly with someone else." (Doc. No. 1 ¶ 8.)

[7] "If a court had denied him the ability to testify using his chosen method of communication without good cause, a police officer had refused to take a report unless he communicated verbally, or a librarian had refused to lend him a book unless he 'used his words,' there is no question that Mr. Duncan would have a claim for discrimination under the federal statutes at issue here." (Doc. No. 18 at 6.)

3:18-cv-00321BEN-BLM

analogous to E.F.'s need for assistance from her service dog, Wonder. Thus, under the *Fry* clues, the gravamen of Plaintiff's claim under the ADA and the Rehabilitation Act here does not center on the denial of a FAPE, but on the access to the school facilities.

Finally, Defendants argue that Plaintiff failed to properly exhaust his administrative remedies under the IDEA because he settled his OAH case against the District. Generally, where a party decides to settle with a school district rather than proceed with a full OAH hearing (a similar decision was made by the plaintiff in *Rivera v. Fremont Union High School Dist.*), the exhaustion requirement is not obviated and the Plaintiff "must bear the consequences that flow from [the decision to settle]." *See Rivera v. Fremont Union High School Dist.*, No. 10-0186, 2010 WL 4157139 (N.D. Cal. Aug. 30, 2013). However, in a case such as this where it has been determined that the Plaintiff's claims do not arise out of a denial of a FAPE, the exhaustion requirements do not apply.[8] *See Fry*, 137 S. Ct. at 755-56. Therefore, Plaintiff's claims are not subject to the IDEA exhaustion requirements.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss.

### III. CONCLUSION

Defendants' Motion to Dismiss Plaintiff's Complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 22, 2019

_____
**HON. ROGER T. BENITEZ**
United States District Judge

---

[8] "The Court held a 'complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(*l*)'s exhaustion rule ....'" *Fry v. Napoleon Comm. Sch.*, 137 S. Ct. 743, 756 (2017).

3:18-cv-00321BEN-BLM